Good morning, your honors. May it please the court, Ashley All for the United States. With the court's permission, I'd like to reserve about three minutes for rebuttal. The order dismissing the indictment in this case must be reversed. The district court committed legal error in both a specific and, I would submit, a more general manner. Specifically, the court misapplied the distinctness requirement under RICO. It might help me if you would tell me, in your view, what is the purpose in RICO of having a distinct requirement? Both statutory and more generally, philosophically. My understanding is, under Cedric Kushner, the court took a fairly textual approach to the distinctness requirement, saying that the way that 1962 C&D had been phrased suggested that there did have to be a difference between the person, alleged as the defendant, and the enterprise that that defendant was employed by or associated with. I think that textual distinction is a proper one. I would say under the statute that in order for a person to be associated with or employed by a particular enterprise, it certainly suggests that that enterprise should be broader than that person. And as a result, under Cedric Kushner and living designs, the test this court has articulated, I think, followed that same sort of shape of the Venn diagram, which is that the enterprise charged has to be different from, neither the same as, nor a part of the defendant. So is it sufficient, in your view, if the person is a subset of the enterprise? Yes. It has to, in terms of distinctness, absolutely. The person also has to meet the definition of person under RICO as an entity capable of holding property. There's not a dispute here that this one would be. But yes, I would submit that if the person is a subset of the enterprise, that would be sufficient. That said, this court has articulated the test in really two different ways. I think they reach the same place. But the first way is that, as I already said, that the enterprise has to be different from and neither the same as nor a part of the charged defendant. Or alternatively, using language that originally came from the Seventh Circuit and then was adopted by Cedric Kushner, that there has to be a legal or practical separation between the defendant and the enterprise. And I would submit that under either articulation of the test, the facts are more than sufficient here. Putting aside the general error, which I'll get to in a second, which I think has to do with analyzing these pleadings under a criminal standard, the indictment alleged that the defendant is an unincorporated association called the Mongol Nation. And notably, this isn't an entity of the government's creation. This is an entity that exists. It registered the gang's trademarks. It has existed for decades before that. It has from time to time transferred its rights in the marks to other incorporated entities back and forth. It has defined itself in USPTO filings as an unincorporated association. It has defined itself as comprising only full-patched members of the gang. And it has identified itself as an entity that has long held the gang's intellectual property. And so concerns about artful pleading really aren't well applied here. The facts, I will agree, are strange. But they're strange because reality is strange in this case. And we have the instance where a gang has created an entity to hold its trademark rights. And that entity, in addition to having... You seem terribly interested in these trademark rights. I mean, the individuals, many of them are in jail, I gather. Is there some reason that I don't understand why these couple of trademarks are important to the government? I would say there are, I guess I have one key answer, which is that the registration of trademarks by a gang gives that gang the right to go to federal court and enforce its violent territory and its gang rights using the power of the courts. That is a huge distortion of the federal trademark system. And I think it is extremely righteous for the government to try to strip a gang of the power to expand its own value and territory with the use of the federal trademark system. Does that matter to the answer to this case? No, not at all. So we don't have to agree with whether it's righteous or not? That's absolutely right, Your Honor. I think it's beyond the scope of the appeal here. So what do you say is your best authority for the notion that the Mongol nation here is distinct from the larger Mongol gang? I think Living Designs is on point. Living Designs had the company and then the company and then the law firm. Is that right? It was the company, the law firms, and expert witnesses. So it seems like that was here. Well, let me just, here you have the Mongol nation, right? And then you have the Mongol nation plus the up-and-comers who want to be part of the Mongol nation. Is that right? And also associates that have no desire to be members and women who cannot be members. Hang-arounds is the general term. Yeah, the hang-arounds. So it seems like all you're adding are the probationary or prospective members and the hang-arounders. I'm just having a hard time figuring out how they can be distinct and how they're equivalent to the law firm in Living Design. In my view, Living Designs is actually a harder case. I think conceiving of a litigation enterprise such that any entity that hires lawyers to defend itself in court can automatically become an enterprise so long as it hires outside law firms. I think that's a really hard sell. I would submit it's actually easier in this case. If you think of the Mongol nation as a person, think of it as all of the members of the Mongol nation, all the full-patched members, just imagine that really were a person. And that person has joined with other people that are not the same as it. Control is not the test. Control or relationship, in fact, just goes to the existence of an enterprise, in fact. But isn't it also relevant to separateness? Because as I understood it, the overall gang has a completely separate governing structure with the mother chapter. I keep wanting to call it the mothership. It has a separate governing structure that is not equal to or the same as the Mongol nation. That is correct. Okay, so it would seem to me that that might be relevant to your point. Yeah, I think that is correct. And again, it goes to the lack of artificiality in this pleading. If you take out the Mongol nation, I'm sorry, what do you have left? These uppercummer, basically you have. I would submit, Your Honor, that this is no different from many RICO cases where gangs are charged. The way that gangs are charged under RICO typically separates out members from associates from hang-arounds is the term here. And in those cases, too, you could say, well, if you eliminate all of the members of the gang, you're just left with these associates. But that's the point. The members and associates together form the association, in fact. And taking a step back and going to my original point about criminal pleading standards, I think the really important thing here is that the district court lost sight of the very straightforward standards for analyzing criminal pleadings. It's a constitutional standard. Typically, all the government need do is allege the elements of the offense. We far exceeded that standard here. And importantly, what we did not allege, we did not allege a strict agency relationship between all the hang-arounds and the Mongol nation. We did not allege that the hang-arounds are employees of some corporation, such that it would fall under the yellow bus case or any of the other cases cited by the defendant. We didn't allege those things. And judged by the face of the indictment, instead, we alleged an unincorporated association, an entity recognized by California law that itself has a distinct role in the enterprise and is not either broader than or just having the enterprise be a part of itself. Instead, it is smaller than the enterprise, includes other members, and it plays a different function in the overall charged enterprise. With the court's permission, I'd like to reserve my remaining time. You may do that. Good morning, Your Honors. If it pleases the court, I'm Joseph Yanni, and I represent the Mongol nation, the Mongols Motorcycle Club. It's been called many things. Let me start by saying we vehemently disagree with the characterizations of the club that have been set forth in the indictment. This is a club that was formed in 1969 by about, in San Diego, California, by about five Navy SEALs who were home from deployment in Vietnam. They adopted the name the Mongols because they were the wandering warriors who were sent by their nation to fight, bleed, and die if necessary. The ones that didn't die were lucky enough to come home. This doesn't help us with the question that we're faced with, does it? Let's assume they're great guys and it's a great club. What is going on from there? Yes, Your Honor. Really, I think a common sense approach, which has been urged by the government, is the one that we should take here. There was a prior case in which 79 men were indicted and people took plea bargains. I won't debate the value of plea bargains. But in that case, a related case, by the way, it's not just a separate and distinct case that's floating out there somewhere. The government, in their first pleadings in this case, stated that this case was a related case to the prior 2008 litigation. That means it arises out of the same core of operative facts, involves the same alleged conspiracy, etc. As Judge Carter kept saying, who's going to jail here? Nobody's going to jail. The men who have allegedly done something wrong have gone to jail. It's no different than the L.A. County Sheriff. Let me ask you, why isn't this the same as living designs? How is this distinct from living designs? Living designs is completely different. You had three separately distinct legal entities there. You had the client, which had its own corporate identity and was a profit center. You had lawyers who had its own separate legal identity and ethical obligations and duties of candor with the court. You had experts who had, by their nature, to be separate and distinct from both the client and the law firms to qualify as experts in a case. They all had existence that did not dictate that they sit there and wait at the beck and call. Let me ask you about that. The government alleges that the Unincorporated Association of the Mongol Nation had a separate voluntary existence independent of this indictment. And that seems correct, as far as I can tell. I'm sorry, the Mongol Nation? The Mongol Nation is an unincorporated association that didn't just exist in the context of the indictment. It existed elsewhere to register the trademarks, correct? The Mongol Nation is the Mongols. Okay, just answer my question, if you would. It's a yes or no question. Is the Mongol Nation an unincorporated association that existed prior to the issuance of this indictment? The Mongols Nation is, at the time, was an unincorporated association. And is it also correct that the gang, the overall gang, includes other human beings besides the ones who form this unincorporated association, the women, the hangarounds, the prospective members, and other individual people? There are people who are members of the Mongols Nation. Are there members of the gang who are not in this unincorporated association? In other words, are there hangarounds? Are there women who are associated with the gang? And are there prospective members who are not yet full-patch members? But in accordance with the laws you're on. Again, a yes or no answer. Are there such individual people? They have an affiliation. They are affiliates. Okay, so the indictment says, and it may be completely unsuccessful, but we're really being asked quite a theoretical question here, and that is whether the fact that this unincorporated association is a subset of a larger group of human beings is sufficient to allow the smaller group to be called a person and the larger group to be called an enterprise. And I understand your answer is no, but I don't understand why. Because in accordance with all the law that was cited, including living design and the stuff there in the Chappaqua case, from the Riverwood Chappaqua out of the Second Circuit, you can't have parts of a corporation or an entity. Let's call it an entity. Not a corporation. The gang is not a corporation, correct? The club is not. The club. At this point it is a corporation, but at the time of the indictment it wasn't. It has people who associate with it. It would be no different than vendors to any entity out there, or bartenders that serve the L.A. County Sheriff's Department, which is an entity. They have no existence separate and distinct from the Mongols Nation Motorcycle Club. The full patch members, if there was no Mongols Motorcycle Club,  But was I correct to note that the motorcycle club, the larger group, has a different governing structure that is not this group that is run from the mother chapter? That's not correct at all, Your Honor. Where did I get that notion? Probably from the government's brief, which is inaccurate. There is a mother chapter, which was the original founded by the Navy SEALs and relocated out in San Bernardino. There are other chapters. There are members of the mother chapter. There are members of the other individual chapters. There are full patch members. There are probate. Do they have a president and an equivalent, a board of directors? Yes, of course we do. Okay. And I believe the indictment even sets that forth. Wait, wait, wait, wait, wait. They have a board of directors, you said, right? And a president. Who makes the decisions, the binding decisions, for the nation, and who makes the binding decisions for the gang? A decision to throw away all your passports, whatever it is, don't ride with your helmet off, whatever it is, who makes the decision for the smaller group and the larger group? The members. The members elect the president. The members elect the officers. The individual chapters elect their officers, and they govern. The individual members decide who comes in and who doesn't, who gets to associate, who gets to express their First Amendment association and rights. I can understand how that works for the nation. I don't understand how that works for the gang, which is like who makes the decisions for the gang? First of all, there is no gang, Your Honor. There's a club. That's all there is. And the only thing in the indictment. So the perspective, what do you call the perspective? Prospect, Your Honor. Wait, what? Prospects. Prospects. And that group of prospects, what's their title, if any? Prospects. But are they part of the Mongol gang? First of all, there is no Mongol gang. There is a Mongol club. You have the Mongol nation. I'm sorry. I'm sorry. Those are too distinct? No, they're not actually too distinct, and that's what the judge correctly noted in his decision. There is no Mongol nation's motorcycle club without what the government has called the Mongol's gang. And even in the indictment paragraphs 10, 11, 12, 13, the government in its own pleading says that these less than top brass of the club are at the beck and call of those at the top. That's exactly what. So the individuals who are not members of the nation are independent of the nation. That is to say they are individuals. They're all these individuals who are not members of the nation but are affiliated with it in some way, but they're not members. And then there's the nation, which has all of these clubs in it. I mean, I don't understand why all of these individual people who are not members of an organization, you say, why they can't be? The other people for the distinct people for RICO purposes. If there is no Mongols nation motorcycle club, there are no Mongols affiliates. There are no Mongols associates, and that's what Judge Carter correctly latched onto. There is no distinction between the Mongols nation motorcycle club and the Mongols nation gang as they've defined it. Your Honor, the only thing in the indictment that the Mongols nation is accused of doing is procuring a trademark. Well, that's a different question as to that has nothing to do with distinctiveness. I do have a question. So let's assume that the Mongol nation is not distinct from the enterprise. How could the government ever pursue the market against them? By separate acts. The predicate acts can be pursued individually against the individuals who commit them. It's no different than the L.A. County Sheriff's Department, Your Honor. They have a badge, their mark. It was procured and protected and registered by the L.A. County Sheriff's Department. And it is issued by whoever the hierarchy is to various members of the Sheriff's Department as they are brought in. And if members of that organization commit criminal acts, they can be individually pursued. The only issue here is the men who've allegedly committed wrongful acts have been convicted and they're serving their time in jail. The only issue that's left before the court is are we now going to punish somehow the other thousand men who belong to this club that did nothing wrong? It would be like saying that the L.A. County Sheriff's Department is a criminal organization because members of the Sheriff's Department abused the civil rights of various prisoners or there was an attempt to intimidate FBI agents or there were various things that go on. Those were individual crimes that were committed by individuals. There is no need for a RICO overlay when there is no distinction in this case. Thank you, Counsel. You have exceeded your time by quite a bit, and we appreciate your arguments, and I think we understand your position. Thank you, Your Honor. Very briefly, Your Honor, starting with Judge Murguia's question. The Mongol Nation, a successor entity to the Mongol Nation, intervened in prior cases to assert that it was the only entity that owned the trademark rights, and as a result, those trademark rights could not be forfeited from individual members of the gang. Now that same entity is saying that the trademark rights cannot be forfeited from it, and I submit, Your Honor, that that is— But is there another way the government could get or pursue the forfeiture of the marks? There is no RICO civil forfeiture, Your Honor. I'm sorry? There is no RICO civil forfeiture. Without charging RICO? I am not aware of one, Your Honor. I think RICO has been the government's theory from the outset in this case, and there has not been a civil forfeiture route. So they're an entity, just like Enron or something else, right? That's correct. But the means to forfeit it would have to be through some statutory basis, and in this case, RICO is the statutory basis for forfeiture. Is the gang an entity, too, the same way that— No, Your Honor. It is an enterprise. It is an associated, in fact, enterprise. So, no, it is not a formal entity. It's an enterprise. Is the enterprise all of these people acting as an enterprise, or is it the individual people, as I thought your adversary was suggesting? So if I understand Your Honor's question correctly, we've charged this as an association, in fact, and I believe that it does squarely meet that definition in the sense that it is a number of individuals who are associated, as a matter of fact, but do not form some sort of formal entity. Some of them, but not all of them, are part of the Mongol nation. That's correct. And to go to Judge Graber's question, if I may finish my answer. Please. What there is—Living Designs, the reason I think Living Designs is the best case for us and why this case is different from the employee-employer cases that defense has relied on, is there is no case ever that has held that an entity defendant is not distinct from outside individuals. There have certainly been cases that have held that entity defendants are not distinct from their own officers or employees. So in Riverwoods, for instance, it was a bank and their officers, or in Yellow Bus, it was a union and its trustee. Here, there is an entity and outside individual people. Can I? Please. So let's say we have a fraternity, and they're full members of the fraternity, and you have pledges, people who want to be in the fraternity. So you have the fraternity as the person, and then you also have them as the enterprise. You have the pledges. Are you saying that in that circumstance, these pledges, if you took out the enterprise, all you would have would be these pledges or, you know, that would be enough? If a subset of the fraternity had organized. Well, but is it a subset? I mean, when you have pledges, they're not batched members. They're kind of wanting to join the organization. If you take out the enterprise, all you have is like a pledge class. Is that sufficient? If the formal members of that fraternity had identified themselves and organized as an entity, that is to say they are, as the Mongol Nation here, a corporate entity here, pardon me, an unincorporated association, then, yes, they would be distinct from individuals that are outside of that entity defendant. So that would include pledges. That would include bartenders at their parties, as defense counsel suggested about the sheriff's department. To the extent that you could identify an association, in fact, under RICO, and a subset of that association, in fact, was an entity that could be charged as a defendant, then I believe that would be distinct as it is in this case. That would be the same thing for partners of a law firm and associates, would it? Would it be the same as partners in a law? I believe it would. I believe you could charge a part. I don't know. I actually don't know if a partnership can be charged as a defendant in RICO. I haven't looked into that, but assuming it could, I think. LLC. I assume it would be the same. And so how about the people who they have made, who are interviewing, the law firm is interviewing, courting, would they be a part, would that be enough to establish a distinct enterprise for the law firm? I think these hypotheticals are really getting actually at the difficulty in establishing the outside edges of an association, in fact. Well, that's what we've been presented with, really, here. Here, there is, there are pleadings that this is an association, in fact, right, that these members of the enterprise do come together, and under Turket, they have sufficient connection to one another to form this association. However, it is only a subset of that association that has come together as an entity, in this case, the Mongol nation. That entity, there is no doubt that it is a person under RICO. There is no doubt that we have alleged that that person has violated RICO, and there is no doubt that the broader enterprise includes individual people that are not included in that indicted defendant. There is no case that supports dismissal of an indictment where it alleges facts such as those, and Living Designs, I would submit, is on point and mandates that the order be reversed here. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both of you. They've been very helpful in this interesting case.
judges: Sack, Graber, Murguia